Kevin Perry Jackson v. The State of Texas
















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-217-CR

     KEVIN PERRY JACKSON,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 18th District Court
Johnson County, Texas
Trial Court # 31441
                                                                                                                

O P I N I O N
                                                                                                                

      A jury convicted the appellant, Kevin Perry Jackson, of murder for the shooting death of
Patrick Diggs and assessed punishment at 60 years’ incarceration in the Institutional Division of
the Texas Department of Criminal Justice and a fine of $10,000. See Tex. Pen. Code Ann. §§
12.32, 19.02 (Vernon 1994). Jackson appeals his conviction, contending: (1) the evidence is
legally insufficient to support his conviction; (2) the evidence is factually insufficient to support
his conviction; (3) the trial court erred in admitting evidence of an extraneous offense during
punishment because the State did not provide reasonable notice of its intent to introduce the
offense during the punishment phase; (4) the trial court erred in admitting evidence of an
extraneous offense during the punishment phase because the State did not prove beyond a
reasonable doubt that the offense was committed by Jackson; and (5) the trial court erred by
finding Jackson’s confession was voluntary. We affirm.
SUFFICIENCY OF THE EVIDENCE
      In his first and second points of error, Jackson contends the evidence is legally and factually
insufficient to support his conviction because the State did not prove beyond a reasonable doubt
that Jackson had the requisite intent for murder. Jackson argues that due to his mental disability
he could not have knowingly or intentionally shot Patrick Diggs.


 We disagree.
      When we review a challenge to the legal sufficiency of the evidence, we view all the evidence
in the light most favorable to the verdict to determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443
U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); Alvarado v. State, 912 S.W.2d 199, 207 (Tex. Crim.
App. 1995); Geesa v. State, 820 S.W.2d 154, 157 (Tex. Crim. App. 1991); Hernandez v. State,
938 S.W.2d 503, 513 (Tex. App.—Waco 1997, pet. ref’d). In conducting such a review, we must
remember that the jury is the sole fact finder and is charged with the duty of judging the credibility
of the witnesses, reconciling conflicts in testimony, and accepting or rejecting any or all of the
evidence on either side. Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). If
some evidence establishes the accused’s guilt beyond a reasonable doubt, then we may not reverse
the judgment on legal insufficiency grounds. Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim.
App. 1988). This is true even if the jury was allowed to consider improperly admitted evidence. 
See Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993); Rodriguez v. State, 819
S.W.2d 871, 873 (Tex. Crim. App. 1991).
      In conducting a factual-sufficiency review, we must view all the evidence, presented by both
the State and the defendant, and reverse only if the verdict is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d 126, 129
(Tex. Crim. App. 1996). Furthermore, we give great deference to the jury’s finding, realizing
that we are reviewing the facts from a lifeless record. See Jones v. State, 944 S.W.2d 642, 648
(Tex. Crim. App. 1996), cert. denied, — U.S.—, 117 S.Ct. 1561 (1997); Clewis, 922 S.W.2d at
133; Hernandez, 938 S.W.2d at 512; Mata v. State, 939 S.W.2d 719, 725 (Tex. App.—Waco
1997, no pet.).
Facts
      Patrick Diggs was found dead during the early morning hours of July 8, 1996, in the
apartment of his sister, Chandrea. Diggs was found lying on the living room floor, with a sheet
partially covering his body and wrapped around his head and neck. There were two bullet holes
in his head. Several weeks after Diggs’ body was discovered, Doug Allen, the chief of the
Grandview Police Department, and N. H. Laseman, an investigator for the Johnson County
District Attorney’s Office, questioned Jackson about the murder. Jackson confessed to shooting
Diggs twice in the head at point-blank range after the two had spent the night in the same
apartment. 
      In a written statement, Jackson detailed the shooting. According to Jackson’s statement, after
Chandrea left the apartment on Sunday morning, he started thinking about the fight he and Diggs
had had several weeks earlier and during which Diggs hit him in the head. He thought there was
a gun in the apartment and, when he found a .22 caliber revolver in the linen closet, he took the
gun from the closet and spent a “long time [ ] th[i]nking about shooting [Diggs].” He then shot
Diggs once in the neck, but Diggs continued to move, so Jackson shot him a second time in the
head. Jackson also took Chief Allen and Lieutenant Laseman to the culvert in Grandview where
he had abandoned the murder weapon. Chief Allen recovered the gun, which had two rounds
missing, and a wallet which had a piece of paper with Diggs’ name on it.
      Frank Schiller, the criminalist who analyzed the bullet fragments retrieved from Diggs’ head
and the sheet which was wrapped around Diggs, testified that, based on the total weight of the
fragments recovered from Diggs’ head, Diggs sustained more than one shot. Schiller also stated
that, based on the accumulation of smoke residue and burned gun powder surrounding the holes
in the sheet, neither of the two bullets were fired from a distance of greater than six inches. 
Clarifying his testimony, Schiller said that one of the bullets was probably fired from a distance
of about an inch and the other bullet was fired from no more than three inches.
Legal Sufficiency Analysis
       The Court of Criminal Appeals has held that a confession to the charged crime, by itself, is
legally sufficient evidence to support a conviction. Lane v. State, 933 S.W.2d 504, 507 (Tex.
Crim. App. 1996) (citing Fisher v. State, 851 S.W.2d 298, 304 (Tex. Crim. App. 1993)). 
Jackson confessed to shooting Diggs twice in the head. Jackson’s confession constitutes legally
sufficient evidence to support his conviction for murder. Thus, Jackson’s contention that the
evidence is legally insufficient to support his conviction is overruled.
Factual Sufficiency Analysis
      We also conclude the evidence is factually sufficient to support the verdict against Jackson. 
The evidence shows that Jackson searched for a gun, which he only presumed was in the
apartment, spent time thinking about shooting Diggs before actually doing so, and then shot Diggs
twice in the head at a very close range. Based on these facts, which show a purposeful intent on
Jackson’s part to shoot Diggs, we cannot say that the verdict is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. Jackson’s contention that the evidence
is factually insufficient to support his conviction is overruled.
THE ACCUSED’S STATEMENTS
      In his fifth point of error, Jackson contends the oral and written statements he gave to police
should not have been admitted into evidence. Specifically, Jackson argues the trial court abused
its discretion in finding that Jackson had sufficient mental capacity to voluntarily waive his rights
to self-incrimination and confess to shooting Diggs.
Jackson v. Denno Hearing
      The trial court conducted a hearing outside the presence of the jury to determine whether
Jackson gave his written and oral statements voluntarily. See Jackson v. Denno, 378 U.S. 368,
380, 84 S.Ct. 1774, 1783 (1964). At the hearing, Chief Allen and Lieutenant Laseman both
testified to substantially the same facts surrounding the taking of Jackson’s statement. On August
22, 1996, Chief Allen and Lieutenant Laseman went to the Waxahachie Police Department to
question Jackson about Diggs’ murder.


 After entering the interview room and introducing
themselves to Jackson, Chief Allen read Jackson his Miranda


 rights. Jackson said he understood
his rights but still wished to talk to Chief Allen. Jackson then denied any involvement in Diggs’
death. At some point thereafter, Jackson agreed to travel to Arlington with Chief Allen and
Lieutenant Laseman.


 The threesome arrived at a private office in Arlington, and Chief Allen
again read Jackson his Miranda


 rights. Jackson then admitted to shooting Diggs and indicated
he wanted to make a written statement about the offense. 
      Prior to Jackson’s writing out his statement on a pre-printed form, Chief Allen again read
Jackson his rights, this time from the statement form. Chief Allen had Jackson place his initials
after each of the rights to indicate his understanding of each right. Jackson proceeded to make a
written statement about the shooting of Diggs. When Jackson was finished, Chief Allen reviewed
the statement. Determining that Jackson’s handwritten statement was “hard to read,” Chief Allen
asked if Jackson would object to telling the story while Chief Allen wrote it down. Jackson
agreed, and after reading the rights from the pre-printed form a second time, Chief Allen wrote
out a second statement as Jackson related the events surrounding Diggs’ murder. Jackson then
signed the statement. Additionally, Jackson told Chief Allen and Lieutenant Laseman he had
hidden the murder weapon in a culvert near the crime scene. Jackson then directed the officers
to the location where Chief Allen retrieved the gun and Diggs’ wallet. 
Voluntariness of Statements 
      To be admissible, a confession must be voluntarily given and obtained in compliance with
Miranda.


 Ochoa v. State, 573 S.W.2d 796, 801 (Tex. Crim. App. 1978). Whether it is
voluntarily given is determined from a totality of the circumstances surrounding its taking. 
Creager v. State, 952 S.W.2d 852, 855 (Tex. Crim. App. 1997) (citing Haynes v. Washington,
373 U.S. 503, 514, 83 S.Ct. 1336, 1343 (1963)); Penry v. State, 903 S.W.2d 715, 744 (Tex.
Crim. App. 1995). The rules regarding the voluntariness of a statement apply to both oral and
written statements. Morales v. State, 466 S.W.2d 293, 297 n.2 (Tex. Crim. App. 1970).
      At a hearing on the voluntariness of a confession, the trial court is the sole fact finder and
exclusive judge of the credibility of the witnesses. Penry, 903 S.W.2d at 744; Romero v. State,
800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Sendejo v. State, 953 S.W.2d 443, 448 (Tex.
App.—Waco 1997, pet. ref’d); Green v. State, 839 S.W.2d 935, 940 (Tex. App.—Waco 1992,
pet. ref’d). The trial court’s ruling on whether a confession was voluntary will not be disturbed
absent an abuse of discretion. Meek v. State, 790 S.W.2d 618, 620 (Tex. Crim. App. 1990);
Sendejo, 953 S.W.2d at 448. 
      Evidence of diminished mental capacity is only one factor to be considered by the trial court
in determining from the totality of the circumstances whether the accused voluntarily and
knowingly waived his rights prior to making a statement. Penry, 903 S.W.2d at 744; Bizzarri v.
State, 492 S.W.2d 944, 946 (Tex. Crim. App. 1973); Green, 839 S.W.2d at 940. The question
is whether the accused’s mental impairment is so severe that he is incapable of understanding the
meaning and effect of his statement. Casias v. State, 452 S.W.2d 483, 488 (Tex. Crim. App.
1970); Green, 839 S.W.2d at 940. This is usually a question for the fact finder. Bell v. State,
582 S.W.2d 800, 809 (Tex. Crim. App. 1979); Green, 839 S.W.2d at 940.
      The evidence adduced at the Jackson v. Denno


 hearing shows that Jackson had his rights read
to him a total of four times and that after each time he agreed to continue conversing with Chief
Allen and Lieutenant Laseman. The defense presented no evidence to refute either of the officers’
testimonies. Based on the evidence before us, we cannot say the trial court abused its discretion
in finding that Jackson had sufficient mental capacity to understand his rights and to knowingly
waive those rights when he confessed to shooting Diggs and told Chief Allen and Lieutenant
Laseman where the murder weapon was located. See Meek, 790 S.W.2d at 620; Sendejo, 953
S.W.2d at 448; see also Bell, 582 S.W.2d at 809; Green, 839 S.W.2d at 940. Therefore,
Jackson’s fifth point is overruled.
EXTRANEOUS OFFENSE
      In his third and fourth points of error, Jackson contends the trial court erred in admitting
evidence that he had engaged in deadly conduct in Hill County on September 9, 1995. Jackson
maintains that evidence of this extraneous offense should not have been admitted because the State
did not provide reasonable notice of its intent to introduce the offense during the punishment phase
of trial and because the State did not prove beyond a reasonable doubt that Jackson was actually
involved in the incident.
Notice
      In his third point, Jackson argues the trial court committed error by admitting evidence that
he was involved in an incident whereby he took a handgun from the trunk of a car and proceeded
to fire three shots at the home of Tammy Lynette Sheffield. According to the record, Jackson
fired the shots after a confrontation between Sheffield and Chantell Johnson, one of Sheffield’s
coworkers, which occurred outside Sheffield’s residence. Jackson contends the State failed to
provide him with reasonable notice of its intent to introduce evidence of this incident because the
first indication he had of the State’s intent to use the extraneous offense was the Sunday evening
before his trial was to commence on Monday morning.


 We agree with Jackson.
        Article 37.07 of the Code of Criminal Procedure provides:
On timely request of the defendant, notice of intent to introduce evidence under this
article [of the defendant’s prior criminal record] shall be given in the same manner
required by Rule 404(b), Texas Rules of Criminal Evidence. . . . The requirement under
this subsection that the attorney representing the [S]tate give notice applies only if the
defendant makes a timely request to the attorney representing the [S]tate for the notice.

Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g) (Vernon Supp. 1998). Texas Rule of Criminal
Evidence 404(b) provides in relevant part that evidence of other crimes may be admissible during
the State’s “case in chief” for certain purposes if, upon timely request by the accused, “reasonable
notice is given in advance of trial” of the State’s intent to introduce evidence of other crimes
committed by the accused. Tex. R. Crim. Evid. 404(b).
      The State made its intent official when it filed its “Third Amended Notice of Intent to
Introduce Evidence of Extraneous Matters” on Monday morning, the day Jackson’s trial was to
begin. However, because this notice alleged the name of the wrong victim, the State had to file
a “Fourth Amended Notice of Intent to Introduce Evidence of Extraneous Matters.” This notice
was filed at 12:33 p.m. on Thursday, July 10, just prior to the punishment phase of Jackson’s
trial. This notice properly listed the name of the victim, Tammy Lynette Sheffield, who was to
be called as a State’s witness during punishment.
      In Hernandez v. State, this court addressed the issue of what constituted reasonable notice in
regard to Texas Rule of Criminal Evidence 404(b). 914 S.W.2d 226, 234 (Tex. App.—Waco
1996, no pet.). We held that notice of the State’s intent to introduce evidence under Rule 404(b)
was not reasonable when it was tendered to the defendant the Friday afternoon before trial
commenced on the following Monday morning. Id.; see Neuman v. State, 951 S.W.2d 538, 540
(Tex. App.—Austin 1997, pet. ref’d). We see no reason not to apply the same standard of
reasonableness to notice of the State’s intent to introduce evidence under article 37.07, section 3(g)
of the Code of Criminal Procedure.
      The State argues that the reasonableness requirement should be flexible enough to allow for
“last minute discoveries of extraneous offenses” and that lack of bad faith on the State’s part
should be taken into consideration. Whereas we do not believe that “reasonable notice” can
necessarily be defined by a specific number of days, neither can we countenance notice being
given during the very final stages of trial preparation, even under the most scrupulous of
circumstances. To do so would be to undermine the purpose of article 37.07's requirement that
the State provide the accused with notice so the defendant can adequately prepare for the State’s
introduction of the extraneous offenses during the punishment phase. See Hernandez, 914 S.W.2d
at 234 (purpose of Rule 404(b) is to adequately apprise the defendant of the extraneous offenses
the State intends to introduce at trial). Therefore, we conclude the trial court erred in admitting
evidence of the extraneous offense. Having determined that error occurred, we must now
ascertain if any harm resulted from the error.
Harm Analysis
      Texas Rule of Appellate Procedure 44.2 governs how harm is assessed after error is found
in criminal cases. Tex. R. App. P. 44.2. Rule 44.2 provides:
(a) Constitutional Error. If the appellate record in a criminal case reveals constitutional
error that is subject to harmless error review, the court of appeals must reverse a
judgment of conviction or punishment unless the court determines beyond a reasonable
doubt that the error did not contribute to the conviction or punishment.
 
(b) Other Errors. Any other error, defect, irregularity, or variance that does not affect
substantial rights must be disregarded.

Id. The first inquiry then is whether an error involving article 37.07 of the Code of Criminal
Procedure is a constitutional error or other error that could have affected the defendant’s
substantial rights. Article 37.07, section 3(g) addresses the notice requirement imposed upon the
State when it intends to introduce, during punishment, evidence of any extraneous crime or bad
act of the defendant which has not resulted in a final conviction. Tex. Code Crim. Proc. Ann.
art. 37.07, § 3(g). This requirement is obviously a “creature of state law,” promulgated by the
legislature, and is not of constitutional dimension. See Umoja v. State, No. 02-96-236-CR, slip
op. at 3, 1998 WL 178632, at *1 (Tex. App.—Fort Worth Apr. 16, 1998, no pet.) (on rehearing)
(Rule 404(b) is a rule of evidence promulgated by the Court of Criminal Appeals). Therefore, we
must apply Rule 44.2(b) and disregard the error unless it affected a substantial right of the
defendant. See Tex. R. App. P. 44.2(b).
      In considering harm, we must review the entire record from the punishment phase to
determine whether the error had more than a slight influence on the jury’s assessment of Jackson’s
punishment. King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v.
U.S., 328 U.S. 750, 776, 66 S.Ct. 1239, 1253 (1946)); see Reeves v. State, No. 10-96-196-CR,
slip op. at 32 (Tex. App.—Waco May 6, 1998, pet. filed). If we find that it did, we must
conclude the error affected Jackson’s substantial rights in such a way as to require a new hearing
on punishment. Id.; see Tex. Code Crim. Proc. Ann. art. 44.29(b) (Vernon Supp. 1998). Also,
if we have grave doubts about the error’s effect on the jury’s determination, we must remand for
a new punishment hearing. Id. Otherwise, we should disregard the error. King, 953 S.W.2d at
271; Reeves, No. 10-96-196-CR, slip op. at 32. 
      During punishment the jury heard testimony from several witnesses. The State called Charles
Horn, a community supervision officer in Hill County, who testified that Jackson was assigned
to him after being placed on probation for assaulting Menyon Pruitt, Jackson’s girlfriend, in May
1996. Todd Freeman, a community supervision officer in Johnson County, also testified for the
State. Freeman stated that Jackson was placed on deferred adjudication community supervision
in September 1994 for the felony offense of carrying a prohibited weapon, the weapon being a
sawed-off shotgun. Freeman also testified that Jackson rarely reported as was required and did
not abide by the other conditions of his community supervision sentence.
      Two of Jackson’s aunts testified for the defense, most specifically about Jackson’s behavior
after he was shot in the head in September 1995. Joyce Mathis testified she was afraid of Jackson,
specifically afraid of what he might do at any given time. She further stated that she did not want
Jackson living with her. Doris Nagib testified that Jackson was “angry,” “irritable,” and
“moody” and that no one could control his actions. Dr. Raymond Finn, a licensed psychologist,
also testified for the defense. According to Finn, there was no way to determine when Jackson
might “become aggressive” and “do something dumb.”
      At the conclusion of the punishment phase, the jury assessed Jackson’s punishment at sixty
years, a term within the permissible range. See Tex. Pen. Code Ann. § 12.32. Based on the
evidence adduced during the punishment phase of trial, we cannot say that the erroneous admission
of evidence about Jackson’s involvement in the Hill County incident had more than a slight
influence on the jury when the jury was presented with other evidence that Jackson had a history
of lawlessness. King, 953 S.W.2d at 271; see Reeves, No. 10-96-196-CR, slip op. at 32. 
Consequently, we conclude that the erroneous admission of evidence of the Hill County incident
did not affect Jackson’s rights as to require a new punishment hearing. See Tex. R. App. P.
44.2(b). Jackson’s third point is overruled.
 Proof
      In his fourth point of error, Jackson again contends the trial court erred in admitting evidence
of the extraneous offense he was accused of committing in Hill County. According to Jackson,
the trial court abused its discretion in making the threshold determination that the State had proved
beyond a reasonable doubt Jackson had committed the offense.
      Article 37.07, section 3(a) provides in relevant part:
[E]vidence may be offered by the [S]tate and the defendant as to any matter the court
deems relevant to sentencing, including. . . any other evidence of an extraneous crime
or bad act that is shown beyond a reasonable doubt by evidence to have been committed
by the defendant or for which he could be held criminally responsible. . . .

Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a) (Vernon Supp. 1998). The Court of Criminal
Appeals has interpreted this provision and held that:
[T]he trial court is deemed the authority on the threshold issue of admissibility of relevant
evidence during the punishment phase of a trial, while the jury, as the “exclusive judge
of the facts,” i.e. finder of fact, determines whether or not the burden of proof for those
offenses presented has been satisfied by the party offering the evidence.

Mitchell v. State, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996). 
      Notwithstanding the jury’s responsibility of deciding if the State has proved the extraneous
offense beyond a reasonable doubt, Jackson expressly limits his complaint to the threshold
determination of the trial court in allowing the State to present the evidence surrounding the
extraneous offense to the jury. Such determination is reviewed under an abuse of discretion
standard. Id.; Saenz v. State, 843 S.W.2d 24, 26 (Tex. Crim. App. 1992). 
      Outside the presence of the jury, Sheffield testified that a female co-worker, Chantell Johnson,
and several other people came to her home and instigated a confrontation. The confrontation
escalated to a point where Sheffield’s husband brought a rifle to the front door and told everyone
to leave. According to Sheffield, she watched the group from a window and saw Jackson take a
handgun from the trunk of a car and fire shots at her house. Even though Sheffield had never seen
Jackson before that night, she was able to identify him because a streetlight illuminated him as he
removed the gun from the car. Sheffield also testified that, on the night of the confrontation, she
heard Johnson call the man who shot at her house “Kevin” and that, based on previous
conversations with Johnson, Sheffield deduced that the man was Kevin Jackson.
      Based on the evidence presented to the court, we cannot say the court’s ruling was so outside
the zone of reasonable disagreement as to be an abuse of discretion. See id.; see also Green v.
State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996), cert. denied, — U.S.—, 117 S.Ct. 1561
(1997); Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). Thus, Jackson’s
fourth point is overruled.
      The judgment is affirmed.
             
                                                                         BOBBY L. CUMMINGS
                                                                         Justice

Before Chief Justice Davis,
            Justice Cummings, and
            Justice Vance
Affirmed
Opinion delivered and filed July 22, 1998
Do not publish