Javier SENDEJO a/k/a Harvey, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–96–137–CR.

Court of Appeals of Texas,
Waco.

Aug. 27, 1997.

Discretionary Review Refused Jan. 7, 1998.

Stephen A. Keathley, Robert C. Dunn & Associates, Corsicana, for appellant.

Patrick C. Batchelor, Criminal District Attorney, Corsicana, Jim Vollers, State Attorney, Austin, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

DAVIS, Chief Justice.

A jury convicted Appellant Javier Sendejo a/k/a Harvey[1] of capital murder. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon 1994). Because the State waived the death penalty, the court sentenced Sendejo to confinement for life in the Institutional Division of the Texas Department of Criminal Justice.

Sendejo appeals claiming in six points that the court erred by:

● allowing the admission of photographs of the victim;

● admitting certain hearsay statements;

● admitting certain "pre-arrest" custodial statements he made to the investigating officers;

● admitting his written confession;

● admitting certain oral statements he made while in custody; and

● denying his request for a charge on the lesser-included offense of murder.

1. The indictment alleged Sendejo's name in this manner. Presumably, the State meant to allege Sendejo is also known as Harvey Sendejo. Nev-

Sendejo alleges in another point that the evidence is factually insufficient to support his conviction. We will affirm the judgment.

## FACTUAL BACKGROUND

The grand jury presented an indictment against Sendejo alleging that Linda Youngblood, Billy Jack Sharp, Billy Roy Huse, Shane Hancock, and he "acting together" intentionally caused the death of Joel Simon Patrico by stabbing him with a knife while robbing or attempting to rob him. The court's charge allowed the jury to find Sendejo guilty if it determined either that Sendejo himself killed Patrico or that Sendejo was criminally responsible for Huse's murdering Patrico. *See* TEX. PENAL CODE ANN. § 7.02(a)(2) (Vernon 1994).

Christopher Wagner testified for the State. Wagner lived with Huse and Youngblood. He testified that on the night of March 9, 1995, Sendejo, his co-defendants, and Wagner were at a club where Huse and Youngblood discussed a plan in which Youngblood would persuade an unidentified man "to go out with them." Afterwards, Huse would "jump him and take his money." According to Wagner, Sendejo agreed to participate in the planned robbery.

Corsicana Police Officer Chad Bingham responded to a dispatch concerning a possible stabbing "at approximately 2:48" in the morning on March 11. The victim's roommate had called 911 upon discovering Patrico's body in their house. The roommate showed Bingham a bowie knife beside the kitchen sink. He then took Bingham to the living room which "was in a lot of disarray." Bingham observed Patrico's body lying supine. The officer described what he saw:

The room looked like there had been a pretty bad fight in there. There was a lot of blood on the floor. Several—if I remember, there were two major pools of blood. One had already had like blood gel in it or something. Blood spattered on the walls, things like that.

Dr. Janice Townsend–Parchman performed an autopsy on Patrico's body. She

ertheless, Sendejo does not contest this allegation. *See* TEX CODE CRIM. PROC. ANN. art. 26.07 (Vernon 1989).

found one hundred four "sharp force injuries." She explained that a knife would be the most common cause of such injuries. Townsend–Parchman expressed her opinion that more than one knife was used to inflict the injuries noted. Townsend–Parchman concluded that Patrico died as a result of the multiple sharp force injuries.

Wagner testified that Sendejo and his co-defendants arrived at his house around 1:20 in the morning on March 11. Wagner recalled that they were acting strangely. He noticed that they were shaken and appeared out of breath as if they had been running. Huse had bloody clothing. He came in, changed his clothes, and told Sendejo "to go burn" the clothes he had been wearing. Sendejo placed the clothing inside the trench coat he was wearing.

Although the timing is unclear from the record, Sendejo, Youngblood, Sharp, and Hancock left the house at some point. Wagner and Huse later joined them at Sharp's house. Wagner saw the red jacket Huse had worn earlier that morning burning in a barbecue pit in Sharp's backyard. Wagner heard Sendejo, Sharp, Youngblood, and Huse discuss plans to leave town. Hancock indicated that he would go to his grandmother's house "because he didn't want to skip town." Wagner recalled that Sendejo altered his appearance by shaving. Youngblood asked Wagner to "go across town" and "get a ride for them so they could skip town."

During Wagner's conversations with Sendejo and his co-defendants, Huse told Wagner "that they had jumped a black man and beat him up." Sendejo interjected that "it wasn't a black man, it was a Mexican man." Later, Youngblood sent Wagner back to her house to get some money. Before returning, Wagner "got scared" and went to a Whataburger restaurant where he reported all this information to Officer Mark Nanny and provided a written statement. Wagner informed Nanny that Sendejo and his co-defendants were at Sharp's residence.

The officers went to Sharp's home and found Sendejo and his accomplices in the process of leaving. The officers detained the suspects and obtained consent from Sharp's aunt to search the premises. The search of the residence revealed packed luggage and a barbecue pit in the backyard containing smoldering ashes. Nanny testified that Hancock wore a trench coat. He handcuffed Hancock and frisked him, finding three knives in the pockets of the coat. Nanny delivered Hancock to another officer for transport.

Sendejo claimed ownership of the coat and one of the knives.[2] Nanny then placed Sendejo under arrest, read him his *Miranda* warnings, and transported him to jail. The next morning, Sendejo advised the police that he wanted to give a voluntary statement. In a typewritten statement signed by Sendejo, he confessed to plotting to rob Patrico, assisting in Patrico's murder by stabbing him "several times," and participating in the search for Patrico's wallet "[a]fter the stabbing was done and [Patrico] quit struggling." Sendejo's confession largely corroborates Wagner's testimony of the pertinent events.

## PHOTOGRAPHS

Sendejo's first point avers that the court erred in allowing in evidence seven photographs of Patrico's body because the probative value of the photographs is substantially outweighed by the danger of unfair prejudice. TEX.R.CRIM. EVID. 403.

Rule 403 governs the admissibility of photographic evidence alleged to be unduly prejudicial. *See Emery v. State*, 881 S.W.2d 702, 710 (Tex.Crim.App.1994). Several factors are weighed to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, including:

> the number of exhibits offered, their gruesomeness, their detail, their size, whether they are black and white or color, whether they are close-up, whether the body is naked or clothed [,and] ... the availability of other means of proof and the circumstances unique to each individual case.

---

**2.** Nanny did not recall at trial whether Sendejo's ownership claim came in response to questioning.

*Long v. State,* 823 S.W.2d 259, 272 (Tex. Crim.App.1991). If a verbal description of an object or scene is admissible, then a photograph of that object or scene is generally also admissible. *Emery,* 881 S.W.2d at 710.

The State offered seven photographs of Patrico's body through Officer Bingham. The photographs depict the wounds on Patrico's body as described by Bingham and other witnesses. The first depicts Patrico as Bingham found him. The second, third and fourth photographs depict Patrico's upper torso from different angles. The fifth photograph is a close-up of a stab wound on Patrico's right side. The sixth depicts Patrico's back wounds. And the seventh is a close-up of the back wounds. Townsend–Parchman used the fifth and seventh photographs to explain her findings.

While the photographs are gruesome to some extent, they demonstrate the brutal nature of the offense committed and reflect the testimony of the State's witnesses. Thus, we overrule Sendejo's first point.

## SENDEJO'S WRITTEN CONFESSION

■ Sendejo argues in his fourth point that the court erred in admitting his typewritten confession because he did not give it voluntarily. More specifically, Sendejo argues that the officers obtained the confession from him while he was under the influence of marihuana which he had smoked earlier.

The court conducted a *Jackson v. Denno* hearing outside the presence of the jury to determine whether Sendejo gave his confession voluntarily. 378 U.S. 368, 380, 84 S.Ct. 1774, 1783, 12 L.Ed.2d 908 (1964). During this hearing, Justice of the Peace Connie Mayfield testified that she arraigned Sendejo the morning of March 12, the day after Sendejo's arrest. Sendejo indicated to her that he understood each of his rights. He did not appear to be overly tired or under the influence of alcohol or drugs.

Corsicana Police Officer Rex Givens testified that he picked up Sendejo from the jail at Sendejo's request shortly after Judge Mayfield arraigned him. Givens recalled that Sendejo appeared tired but did not seem to be under the influence of alcohol or drugs

at that time. Givens advised Sendejo of the statutory warnings provided by article 38.22 of the Code of Criminal Procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 38.22, § 2 (Vernon 1979). Sendejo waived his rights and gave his statement. As Sendejo gave the statement, Givens typed it in the computer. Givens then printed out the statement and presented it to Sendejo for his review. Givens reminded Sendejo of his rights and advised him that he could make any changes he felt necessary. After reviewing the printed statement, Sendejo signed it.

Sendejo offered the testimony of a fellow jail inmate who stated on direct examination that he observed Sendejo smoking marihuana the night he was arrested. On crossexamination, the inmate recanted and admitted that he was asleep and did not see Sendejo smoking marihuana. Another acquaintance testified that he had seen Sendejo in jail smoking what he believed to be tobacco on one occasion. He could not recall when he saw this but did not believe that it was in March 1995.

Sendejo himself testified that he consumed five or six marihuana cigarettes between the time of his arrest and the time he gave the statement. He stated that he would not have given the confession if he had not been under the influence of marihuana and that he did not believe that the signature on the confession was his. He also testified that he did not recall having signed the confession.

The court made written findings of fact and conclusions of law. *Id.* art. 38.22, § 6. The court found among other things that Sendejo understood each of the warnings given him by Judge Mayfield and Givens, that he "knowingly and intelligently waived each of his rights," and that he understood the contents of his written confession "and willingly and voluntarily signed his name to the statement." The court concluded that "[Sendejo's] confession was voluntarily made and signed by the defendant after he was duly and legally warned of all his rights and after the defendant, Javier Sendejo, knowingly and intelligently waived each of his rights."

■ An accused must give his confession voluntarily before it can be used against

him at trial. *Penry v. State,* 903 S.W.2d 715, 744 (Tex.Crim.App.1995). When a confession is challenged on the basis that it was not voluntarily made, the State must prove by a preponderance of evidence that the accused gave it voluntarily. *Alvarado v. State,* 912 S.W.2d 199, 211 (Tex.Crim.App.1995). In determining the admissibility of the confession, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.* We will not disturb the court's findings absent an abuse of discretion. *Id.*

■ A confession is rendered involuntary when the accused makes it while under the influence of an intoxicating substance only if his "intoxication render[s] him incapable to make an independent, informed choice of free will...." *Nichols v. State,* 754 S.W.2d 185, 190 (Tex.Crim.App.1988). Intoxication alone will not render a confession involuntary. *See id.* at 191 (citing *Boggs v. Commonwealth,* 229 Va. 501, 331 S.E.2d 407, 415 (1985) (confession voluntary with evidence of alertness and comprehension where defendant consumed a six-pack of beer and a fifth of whiskey, smoked marihuana, and took two hits of speed); Wanda E. Wakefield, Annotation, *Sufficiency of Showing that Voluntariness of Confession or Admission was Affected by Alcohol or Other Drugs,* 25 A.L.R.4th 419 (1983)).

In *Nichols,* the accused challenged the voluntariness of his confession on the basis that he had consumed preludin, marihuana, and beer six or seven hours before giving it. *Id.* at 190. The court noted that "[w]hether appellant was even under the influence of these drugs at the time he gave his confession is disputed." *Id.* The trial court found that Nichols was not under the influence of them when he confessed, and the Court of Criminal Appeals found nothing in the record demonstrating that the trial court abused its discretion in so finding. *Id.*

In this case the parties dispute whether Sendejo was under the influence of marihuana at the time he gave his written confession. Sendejo's cell-mate recanted his testimony that Sendejo smoked marihuana in the jail. Judge Mayfield testified that Sendejo appeared to understand his rights. She and Givens both testified that Sendejo did not appear to be under the influence of any intoxicating substances.

From this evidence, we cannot say that the court abused its discretion in finding that Sendejo gave his confession voluntarily. *Alvarado,* 912 S.W.2d at 211; *Nichols,* 754 S.W.2d at 190. Thus, we overrule Sendejo's fourth point.

## ORAL STATEMENT MADE WHILE IN CUSTODY

■ Sendejo claims in his fifth point that the court erred in admitting an oral statement of his which the police obtained in violation of article 38.22. The State argues among other things that the court properly admitted Sendejo's statement because it describes where he hid the knife he used to stab Patrico.

Sendejo denied any involvement in the commission of the murder in his testimony. More specifically, he declared that he could think of no reason he would give a statement like his confession because he did not participate in the murder or even enter Patrico's home.

On cross-examination, the State sought to impeach Sendejo with a statement he gave Officer Givens in which he described where he hid the knife with which he stabbed Patrico. Sendejo denied making such a statement. The State recalled Givens to tell the jury about Sendejo's statement describing where he hid the knife. According to Givens, Sendejo told him that he had hidden the knife in Sharp's home and the police would probably not find it. Givens asked Sendejo if he was referring to the hole in the wall of a closet in the house. Sendejo replied that the knife was hidden in that wall. The police obtained a search warrant and recovered the knife the next day "exactly" where Sendejo said it was.

Generally, an accused's oral statement made in response to custodial interrogation is inadmissible unless taken in accordance with the requirements of article 38.22, section 3(a). TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3(a) (Vernon Supp.1997). However, the requirements of article 38.22, section 3(a) do

"not apply to any statement which contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of ... the instrument with which he states the offense was committed." *Id.* art. 38.22, § 3(c); *Santana v. State,* 714 S.W.2d 1, 14 (Tex.Crim.App.1986).

Sendejo described for Givens the location where he hid the knife with which he stabbed Patrico. The police recovered the knife the next day "exactly" where Sendejo told Givens he had hidden it. Thus, the requirements of article 38.22, section 3(a) do not apply to Sendejo's statement. *Id.* Accordingly, the court properly admitted the statement. We overrule Sendejo's fifth point.

## "PRE–ARREST" CUSTODIAL STATEMENTS

■ Sendejo contends in his third point that the court erred in "allowing the admission at trial of prearrest statements" which he made while allegedly in custody. He argues that these statements were obtained in violation of the requirements of article 38.22. The State responds that Sendejo failed to lodge a timely objection to this evidence and thus has not properly preserved the issue for our review. *See* Tex.R.App. P. 52(a).

In order to preserve an issue for appellate review, an appellant must make a timely objection. *Turner v. State,* 805 S.W.2d 423, 431 (Tex.Crim.App.1991). "Objections made after questions are answered do not preserve error for appeal." *Russell v. State,* 904 S.W.2d 191, 196–97 (Tex.App.—Amarillo 1995, pet. ref'd).

In this case, Officer Nanny testified on direct examination that Sendejo claimed ownership of the trench coat and one of the three knives found inside it. Nanny testified that he then arrested Sendejo and read him his *Miranda* warnings. He continued to testify about Sendejo's arrest and transport to the police department. Sendejo made no objection to Nanny's testimony during the direct examination.

On cross-examination, Sendejo asked who gave the officers consent to search the house. He inquired whether the officers had a search or arrest warrant. He then clarified that Nanny read Sendejo the warnings after Sendejo made the statements which he claims are inadmissible. After Nanny so testified, Sendejo objected that the statements are inadmissible.

■ Because Sendejo failed to timely object to the admissibility of his statements, we conclude that he did not properly preserve this issue for our review. *Id.* Moreover, in light of our disposition of Sendejo's fourth and fifth points, we find that the admission of these statements did not contribute to Sendejo's conviction or punishment.

Wagner had already testified that Sendejo wore the trench coat, thus Sendejo's claim of ownership was cumulative. *See Mayes v. State,* 816 S.W.2d 79, 88 (Tex.Crim.App. 1991). In addition, when we consider Sendejo's claim that he owned the knife, which was in no way connected to the murder, in light of the record as a whole, we conclude that the admission of this statement made no contribution to his conviction or punishment. *See Johnson v. State,* 803 S.W.2d 272, 285 (Tex.Crim.App.1990). Accordingly, we overrule Sendejo's third point.

## HEARSAY TESTIMONY

Sendejo avers in his second point that the court erred in allowing Wagner to relate to the jury five statements made by Sendejo himself and his co-defendants. Sendejo claims that the court admitted these statements in violation of the hearsay rule. *See* Tex.R.Crim. Evid. 801, 802. The State responds that each of the statements is admissible either because it is not hearsay or because it fits within an exception to the hearsay rule.

The statements in issue are as follows:

Prosecutor: O.K. Did you hear anyone that night discussing leaving town?

Wagner: Yes, ma'am.

[Sendejo's hearsay objection overruled]

Prosecutor: Who did you hear discussing leaving town?

Wagner: Harvey Sendejo, Billy Jack Sharp, Linda Youngblood and Billy Roy Huse.

Prosecutor: At some point, did Linda Youngblood ask you to go somewhere?

Wagner: Yes, ma'am.

[Sendejo's hearsay objection overruled]

Prosecutor: Where did she want you to go?

Wagner: She wanted me to go across town over on 13th to get a ride for them so they could skip town.

. . . .

Prosecutor: Okay. I want to go back just for a second, Chris, and ask you about—obviously, you're seeing all these things and these people are, you know—like you said, they were acting nervous and some of them appeared to have blood on them. Did you ask them what had happened?

Wagner: Yes, ma'am.

Prosecutor: And what, if anything, did any one of them say?

[Sendejo's hearsay objection overruled]

Wagner: Billy Roy Huse told me that they had jumped a black man and beat him up.

Prosecutor: Okay. And later on that morning did you inquire again as to what had happened to that black man?

Wagner: Yes, ma'am. I was sitting there talking about it and Harvey Sendejo jumped in—

[Sendejo's hearsay objection overruled]

Wagner: Javier Sendejo jumped in and said it wasn't a black man, it was a Mexican man.

. . . .

Prosecutor: Did you hear Harvey Sendejo agree to take part in that plan to rob a Mexican man?

Counsel: And, Your Honor, we object because, again, that is a statement that this witness has heretofore said he didn't hear the witness say.[3]

The Court: I'll overrule the objection.

Prosecutor: You can answer the question.

Wagner: Yes, ma'am.

Prosecutor: And what did Harvey Sendejo say?

Wagner: He just agreed to it.

Prosecutor: Do you recall anything specifically? Do you recall what his words were?

Wagner: No, ma'am.

A hearsay statement is one "offered in evidence to prove the truth of the matter asserted." Tex.R.Crim. Evid. 801(d). Some statements are specifically excluded from this rule, including statements made by a party-opponent and statements of coconspirators made "during the course and in furtherance of the conspiracy." *Id.* 801(e)(2)(A), (E). The Rules of Criminal Evidence allow the admission of statements which tend to expose the declarant to criminal liability as an exception to the hearsay rule. *Id.* 803(24).

■ Two of the statements in issue are Sendejo's own: his interjection that the victim was Hispanic and his agreement to participate in the conspiracy. Rule 801(e)(2)(A) specifically excludes statements of an accused from the hearsay rule. *Id.* 801(e)(2)(A). Thus, the court properly admitted these statements.

■ Rule 803(24) allows the admission of a statement which "so far tends to subject [the declarant] to . . . criminal liability . . . that a reasonable man in his position would not have made the statement unless he believed it to be true." *Id.* 803(24). This rule also provides that statements against the declarant's penal interest are inadmissible "unless corroborating circumstances clearly indicate the trustworthiness of the statement." *Id.*

The Court of Criminal Appeals has held that statements of coconspirators expressing an intent to burn clothing bloodied as a result of a stabbing and describing the details of the recently committed rape and stabbing qualify as statements against interest under rule 803(24). *McFarland v. State,* 845 S.W.2d 824, 835–36 (Tex.Crim.App.1992).[4]

---

**3.** With the exception of this objection, Sendejo's trial counsel objected to each of the prosecutor's questions on the basis of hearsay.

**4.** As the prosecution did in *McFarland,* the State argues that the statements of Sendejo's accomplices are admissible as statements in the course

and furtherance of the conspiracy. However, we need not decide whether the coconspirators made the statements during the conspiracy or in furtherance thereof because the statements are admissible as statements against the declarants'

The remaining statements in issue describe the plans of Sendejo and his accomplices to flee town and the manner in which they attacked Patrico. These statements tended to expose their declarants to criminal liability because they "indicate that [the declarants were] involved with [Sendejo] in some illegal act which could well subject [them] to criminal liability." *Id.* at 836. Wagner's testimony, Sendejo's confession, Sendejo's other statements to the police, and the crime scene itself all provide sufficient evidence to meet the corroboration requirement of the rule. *Id.*

Because the statements at issue either qualified as non-hearsay statements of a party-opponent or under the statement against interest exception to the hearsay rule, the court did not abuse its discretion in admitting Wagner's testimony about the statements. *Id.* at 835–36. Thus, we overrule Sendejo's second point.

## SUFFICIENCY OF THE EVIDENCE

■ Sendejo's sixth point claims that the evidence is factually insufficient to prove that he caused Patrico's death either by acting alone or as a party to the offense. The court's charge authorized Sendejo's conviction for capital murder either as the primary actor or as a party to the offense. The jury returned a general verdict finding Sendejo guilty of capital murder as charged in the indictment.

■ When presented with a factual insufficiency claim, we discard the prism of the light most favorable to the verdict. *Clewis v. State,* 922 S.W.2d 126, 134 (Tex.Crim.App. 1996). We reverse "only if [the verdict] is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.* (quoting *Stone v. State,* 823 S.W.2d 375, 381 (Tex.App.—Austin 1992, pet. ref'd, untimely filed)).

■ We consider all the evidence in the record related to the contested issue,

"not just the evidence which supports the verdict." *Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim.App.1997). We review the evidence tending to prove the issue, "and compare[ ] it to the evidence which tends to disprove that [issue]." *Id.* We give appropriate deference to the jury's decision and do not substitute our judgment for theirs. *Clewis,* 922 S.W.2d at 135. We do not set aside the "verdict merely because [we] feel that a different result is more reasonable." *Id.* (quoting *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634 (Tex.1986)).

■ When the charge allows the jury to convict the accused either as the primary actor or as a party and the jury returns a general verdict of guilt, we will uphold the verdict if either theory is supported by sufficient evidence. *Rabbani v. State,* 847 S.W.2d 555, 558 (Tex.Crim.App.1992).[5] The State need not prove beyond a reasonable doubt that Sendejo dealt the fatal blow in order to support a capital murder conviction on the law of parties. *Id.*

■ In determining whether the evidence supports Sendejo's guilt as a party, we may consider the events which occurred before, during, and after the offense. *Beardsley v. State,* 738 S.W.2d 681, 684 (Tex.Crim.App. 1987); *Green v. State,* 839 S.W.2d 935, 944 (Tex.App.—Waco 1992, pet. ref'd).

The record reflects the following evidence which tends to support Sendejo's participation in the murder and robbery of Patrico:

- Sendejo agreed to participate in Patrico's robbery;
- He stabbed Patrico "several times";
- He assisted in the search for Patrico's wallet "[a]fter the stabbing was done and [Patrico] quit struggling."

Sendejo argues to the contrary that Townsend–Parchman's testimony and findings create a reasonable doubt as to whether the stab wounds he inflicted actually caused Patrico's death. However, an accused need not inflict the fatal wound before he can be found

penal interests. *See McFarland v. State,* 845 S.W.2d 824, 835 (Tex.Crim.App.1992).

**5.** We acknowledge that *Rabbani* was decided prior to *Clewis* and was concerned with the legal

sufficiency of the evidence. Nonetheless, we believe that the same theory applies to both legal and factual sufficiency challenges.

guilty as a party to a murder. *See Rabbani*, 847 S.W.2d at 558.

After reviewing the evidence, we cannot say that the verdict "is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis*, 922 S.W.2d at 134. Thus, we overrule Sendejo's sixth point.

## LESSER–INCLUDED OFFENSE

Sendejo contends in his final point that the court erred in failing to submit a charge on the lesser-included offense of murder. He argues that the court should have submitted the lesser offense because there is some evidence in the record that he did not receive any proceeds from the robbery of Patrico and did not intend to kill Patrico.

Sendejo filed a written request that the court submit a charge on murder as a lesser-included offense. His request cites *English v. State*, 592 S.W.2d 949 (Tex.Crim.App. 1980).[6] His request also urges that the State failed to prove the requisite intent necessary to establish a capital murder charge.

In *English*, the Court of Criminal Appeals reiterated its settled rule that the law of parties applies to capital murder. *Id.* at 955. The court also noted "that a murder committed during the course of a conspiracy to commit robbery is not designated as a capital murder under [section 19.03(a)(2) of the Penal Code]. . . ." *Id.* at 952. However, this aspect of *English* does not apply to the present case because the trial court did not charge the jury on a conspiracy theory. *See id.* at 953–55.

▄ An accused is entitled to receive a charge on a lesser-included offense if:

- the lesser-included offense is included within the proof necessary to establish the offense charged; and
- some evidence "exist[s] in the record *that would permit a jury rationally to find* that if the defendant is guilty, he is guilty only of the lesser offense."

*Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim.App.1993).

The parties do not dispute that murder is a lesser-included offense of capital murder. Thus, the only question is whether some evidence exists in the record that would permit a jury to rationally conclude that Sendejo is guilty only of murder. *Id.*

### Lack of Profit from Robbery

▄ Sendejo argues that because some evidence exists in the record that he received no proceeds from the robbery, he was entitled to the charge on the lesser offense. However, the failure of an accused to receive any proceeds from a robbery does not equate to a finding that the participant is not guilty of robbery. *See Caldwell v. State*, 943 S.W.2d 551, 552 (Tex.App.—Waco 1997, no pet.).

A person commits robbery if he injures his victim "in the course of committing theft." TEX. PENAL CODE ANN. § 29.02(a)(1) (Vernon 1994). " 'In the course of committing theft' means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." *Id.* § 29.01(1).

▄ "[T]he actual commission of theft is not a prerequisite to the commission of robbery; the gravamen of robbery is the assaultive conduct and not the theft." *Green v. State*, 840 S.W.2d 394, 401 (Tex.Crim.App. 1992) (quoting *Crank v. State*, 761 S.W.2d 328, 350 (Tex.Crim.App.1988)). Thus, in order to sustain a robbery verdict, the evidence must show that the accused assaulted the victim in an attempt to commit theft. TEX. PENAL CODE ANN. § 29.01(1); *Green*, 840 S.W.2d at 401.

For a rational jury to find Sendejo guilty only of murder on this basis, there must be some evidence in the record that he did not intend to rob Patrico. However, the record is devoid of such evidence. Sendejo agreed to participate in the robbery of Patrico. In his confession, he told the police that he and his accomplices lay in wait inside Patrico's

---

6. Sendejo's request actually referred the trial court to 767 S.W.2d 711. The case located there is *Beets v. State*, 767 S.W.2d 711 (Tex.Crim.App.

1987). *Beets* appears to have no application to this case as it makes no reference to the issues which should be submitted in a jury charge.

house until Patrico went to sleep. He explained that the plan was to knock Patrico unconscious and take his money. "After the stabbing was done and [Patrico] quit struggling, [Sendejo and his accomplices] all started looking for [Patrico's] wallet."

From Sendejo's own confession, we conclude that a rational juror could not have found that he did not participate in the robbery of Patrico. *Robertson v. State*, 871 S.W.2d 701, 706–707 (Tex.Crim.App.1993); *Gilchrest v. State*, 904 S.W.2d 935, 940 (Tex. App.—Amarillo 1995, no pet.). Thus, the trial court properly refused Sendejo's requested instruction on the lesser-included offense of murder on the basis that he did not profit from the robbery.

### Lack of Intent to Kill

A person commits capital murder if he intentionally kills another in the course of a robbery. Tex. Penal Code Ann. § 19.03(a)(2). Conversely, a person commits murder if while committing a felony, such as robbery, he commits an act clearly dangerous to human life that causes the death of another. *Id.* § 19.02(b)(3).

Sendejo testified that he did not participate in killing Patrico. In Sendejo's confession, he told the police that his co-defendants and he originally determined that they would "jump [Patrico] and take his money." Later however, Huse "started talking about killing him and then taking the money." Sendejo stated that he did not believe Huse "was actually going to follow through with killing [Patrico]."

The statement of an accused that he did not possess the requisite intent to kill, standing alone, does not necessarily require a charge on a lesser-included offense. *See Godsey v. State*, 719 S.W.2d 578, 584–85 (Tex. Crim.App.1986). The statement of an accused "cannot be plucked out of the record and examined in a vacuum." *Id.* Rather, we must examine all of the evidence and determine whether the jury could rationally find that if Sendejo is guilty, he is guilty only of the lesser charge. *Rousseau*, 855 S.W.2d at 673.

Sendejo stated in his confession that he did not believe Huse would follow through with killing Patrico. He then stated that after Huse stabbed Patrico in the neck, Patrico "started yelling and fighting.... [W]hen [Patrico] started fighting, I also tried to hold him on the ground. I also covered [Patrico's] mouth with my hand to try to keep him from yelling." Sendejo did not recall how many times he stabbed Patrico, "but [he knew] it was several times."

"The possibility that initially or at some point during the commission of the robbery [Sendejo] did not have an intent to cause death does not amount to evidence that [he] did not intend to cause [Patrico's] death when the murder was committed." *Id.* at 674. Thus, "[w]e conclude that there is no evidence upon which a jury could rationally find that [Sendejo] had the intent to rob, but not the intent to cause the death of, [Sendejo]...." *Id.* at 675. Therefore, the trial court properly denied Sendejo's request for a charge on the lesser-included offense of murder on the basis of a lack of intent.

Because the evidence does not require the submission of a lesser charge for either of the reasons set forth by Sendejo, we overrule his final point.

We affirm the judgment.