Joseph Michael Fernandez v. State















IN THE
TENTH COURT OF APPEALS
 

No. 10-01-121-CR

     JOSEPH MICHAEL FERNANDEZ,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 338th District Court
Harris County, Texas
Trial Court # 841947
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      A jury convicted Joseph Michael Fernandez of murder and assessed his punishment at 40
years’ imprisonment and a $10,000 fine. Fernandez’s appellate counsel has filed an Anders


 brief. 
Though counsel and this Court informed Fernandez of his right to file a pro se brief or response,
he has not done so. We now address the potential sources of error identified by counsel and
conduct an independent review of the record to determine whether there are “any issues ‘which
might arguably support an appeal.’” See Sowels v. State, 45 S.W.3d 690, 691-92 (Tex.
App.—Waco 2001, no pet.) (quoting Wilson v. State, 955 S.W.2d 693, 698 (Tex. App.—Waco
1997, order), disp. on merits, 3 S.W.3d 223 (Tex. App.—Waco 1999, pet. ref’d)).
BACKGROUND
      The indictment alleges in two paragraphs that Fernandez:
      •    intentionally and knowingly caused Mario Rodriguez’s death by shooting him with a
firearm; and
 
      •    while intending to cause Rodriguez serious bodily injury, caused Rodriguez’s death by
intentionally and knowingly committing an act clearly dangerous to human life, namely
shooting Rodriguez with a firearm. 

Fernandez filed a number of standard pretrial motions, including a motion to suppress a tape-recorded statement he gave to the police. The record does not reflect that he ever had a hearing
on the suppression motion.
      Edward Chapa testified that Fernandez accompanied him on the day of the shooting to
Chapa’s apartment to remove Chapa’s personal belongings after Chapa had an argument with his
wife and decided he would move out. Fernandez took Chapa’s gun in case Chapa and his wife got
into an altercation and the police came. Fernandez put the gun under the front seat of Rodriguez’s
sister Angela’s car.
      Fernandez, Chapa and others had decided to go to a party in Galveston. Rodriguez was going
as well. When they arrived at Rodriguez’s apartment to get him, Fernandez went to Angela’s car
and retrieved the gun before going inside.
      The State offered the testimony of three eyewitnesses to the shooting. The eyewitnesses
agreed that Fernandez and Rodriguez were arguing about the fact that Rodriguez was dating
Fernandez’s ex-girlfriend and the mother of his child. Two of them testified that Fernandez
demanded that Rodriguez give him his “stuff,” which one testified to be his jewelry.


 This one
eyewitness Elijah Medrano testified that Rodriguez promptly “grabbed” a bracelet and necklace
from a table and nightstand when Fernandez made this demand. According to Medrano,
Fernandez then pointed a semi-automatic weapon at Rodriguez. They began to struggle, then the
weapon discharged.
      The eyewitnesses agreed that Fernandez seemed “hysterical,” “scared,” and “distraught” after
he shot Rodriguez. They all agreed that he was crying and claiming that the shooting was an
accident. Fernandez fled the scene on foot with the gun. The police later apprehended him at his
cousin’s home.
      Fernandez gave a tape-recorded statement to the police. In this statement, he says that he
went to Rodriguez’s apartment to confront him about Fernandez’s belief that Rodriguez was
“disrespecting” him by dating the mother of his child. He admits that he retrieved the gun from
Angela’s car before entering the apartment. He states that the gun accidentally discharged while
he was holding it and that Rodriguez was fatally injured as a result.
      The charge submitted to the jury included murder and the lesser-included offenses of
manslaughter, deadly conduct, and criminally negligent homicide. The charge also included a
deadly weapon special issue which the jury was instructed to answer if it convicted Fernandez of
one of the lesser-included offenses.
      Fernandez’s counsel argued that, because of inconsistencies among the eyewitnesses regarding
the details of the occurrence and because of Fernandez’s apparent remorse immediately after the
shooting, the jury should convict Fernandez of one of the lesser-included offenses or acquit him
because the shooting was accidental.
PROPRIETY OF ANDERS BRIEF FOLLOWING JURY TRIAL
      At first blush, it would seem that an appeal of a guilty verdict rendered in a contested jury
trial would not be one in which “there are no arguable grounds to be advanced.” In re J.A.H.,
986 S.W.2d 39, 40 (Tex. App.—Waco 1998, order), disp. on merits, 996 S.W.2d 993 (Tex.
App.—Waco 1999, no pet.) (quoting Johnson v. State, 885 S.W.2d 641, 646 (Tex. App.—Waco
1994, order, no pet.)). Nevertheless, this Court has found on at least one prior occasion that an
appeal following a contested trial on the merits presented no issues of arguable merit. See Taulung
v. State, 979 S.W.2d 854, 858 (Tex. App.—Waco 1998, no pet.). This appears to be an
appropriate application of Anders in a case such as Taulung or Fernandez’s in which the defendant
did not contest his commission of the act for which he was prosecuted but only the culpability with
which he acted. Id. at 857-58.
      Taulung alleged that he committed the sexual assault for which he was convicted under the
mistaken belief that he was at home having intercourse “with [his] own woman.” Id. at 855. 
Fernandez contends that his shooting of Rodriguez was accidental. Accordingly, we conclude that
Fernandez’s appeal has at least the potential to be one which presents no issues of arguable merit.
POTENTIAL SOURCES OF ERROR
      Counsel identifies four potential sources of error: (1) the admission of seven crime scene
photographs; (2) the relevance of a firearms examiner’s testimony that in her experience no semi-automatic firearm has discharged “just from waving it in the air”; (3) the admission of the autopsy
report; and (4) the submission of a deadly weapon special issue in connection with the lesser-included offense of criminally negligent homicide.
Photographs
      The State offered two photographs (State’s Exhibits 16 and 17) depicting Rodriguez’s body
and the bloody bed on which it lay without objection. The State then offered eleven additional
photographs (State’s Exhibits 19 through 29) depicting the body, closeups of the gunshot wound
to the neck, and blood on the ground. Fernandez objected that the probative value of these
exhibits is substantially outweighed by the danger of unfair prejudice they pose. In a hearing
outside the jury’s presence, the court reviewed each of the tendered photographs. The State
withdrew its proffer of four photographs. The court overruled Fernandez’s objection as to the
remaining seven photographs.
      Rule of Evidence 403 governs the admissibility of photographs which are allegedly unfairly
prejudicial. Emery v. State, 881 S.W.2d 702, 710 (Tex. Crim. App. 1994); Horton v. State, 986
S.W.2d 297, 305 (Tex. App.—Waco 1999, no pet.); Sendejo v. State, 953 S.W.2d 443, 446 (Tex.
App.—Waco 1997, pet. ref’d). A photograph is generally admissible when testimony regarding
the matters depicted therein is admissible. Emery, 881 S.W.2d at 710; Horton, 986 S.W.2d at
305; Sendejo, 953 S.W.2d at 447.
      The primary issue at Fernandez’s trial was whether he intentionally or knowingly shot
Rodriguez or did so with a lesser degree of culpability. The photographs “are relevant to the
manner of [Rodriguez’s] death as well as [Fernandez’s] state of mind.” See Emery, 881 S.W.2d
at 710. The court carefully reviewed each photograph before ruling on Fernandez’s objection. 
Accordingly, we cannot say that the court abused its discretion by admitting the photographs. 
Thus, this does not constitute an issue “which might arguably support an appeal.” See Sowels,
45 S.W.3d at 692.
Firearms Expert
      The firearms expert testified that, in her five years’ experience with semi-automatic weapons,
she had never known of one which discharged “just from waving it in the air.” Fernandez
objected that this testimony is irrelevant.
      Fernandez contended that the shooting was accidental. The expert’s testimony goes to the
issue of whether the physical evidence would support a conclusion that the shooting was
accidental. Thus, it is relevant. See Jordan v. State, 928 S.W.2d 550, 556 (Tex. Crim. App.
1996) (expert testimony relevant if “helpful” to jury on contested issue); McGann v. State, 30
S.W.3d 540, 545 (Tex. App.—Fort Worth 2000, pet. ref’d) (same); see also Tex. R. Evid. 702
(expert testimony must “assist the trier of fact to understand the evidence or to determine a fact
in issue”). Accordingly, this does not constitute an issue “which might arguably support an
appeal.” See Sowels, 45 S.W.3d at 692.
Autopsy Report
      Fernandez raised a hearsay objection when the State offered a copy of the autopsy report in
evidence. However, settled law establishes that an autopsy report is admissible under the public
records exception to the hearsay rule. Butler v. State, 872 S.W.2d 227, 237-38 (Tex. Crim. App.
1994) (citing Tex. R. Crim. Evid. 803(8)(B)). Accordingly, the court did not abuse its discretion
by admitting the report over Fernandez’s hearsay objection. Thus, this does not constitute an issue
“which might arguably support an appeal.” See Sowels, 45 S.W.3d at 692.
Deadly Weapon Charge
      The court instructed the jury to answer the deadly weapon special issue if it found Fernandez
guilty of any of the three lesser-included offenses. Fernandez objected that this was erroneous
insofar as it authorized the jury to make a deadly weapon finding in connection with a conviction
for the offense of criminally negligent homicide.
      The charge instructed the jury that it had to find that Fernandez “unlawfully, with criminal
negligence, . . . cause[d] the death of Mario Rodriguez, by shooting Mario Rodriguez with a
deadly weapon, namely a firearm” to convict him of criminally negligent homicide. Under this
charge, a separate deadly weapon issue was unnecessary to enhance the punishment for criminally
negligent homicide from a state jail felony to a third degree felony. Stewart v. State, 70 S.W.3d
309, 316 (Tex. App.—Waco 2002, pet. ref’d). However, a conviction for this lesser-included
offense would not obviate the need for a separate deadly weapon issue to obtain a deadly weapon
finding under article 42.12, section 3g(2) of the Code of Criminal Procedure. Davis v. State, 897
S.W.2d 791, 793-94 (Tex. Crim. App. 1995); Ex parte Flannery, 736 S.W.2d 652, 652-53 (Tex.
Crim. App. 1987); Stewart, 70 S.W.3d at 316.
      Accordingly, the court properly submitted the deadly weapon special issue in connection with
the lesser-included criminally negligent homicide charge. Thus, this does not constitute an issue
“which might arguably support an appeal.” See Sowels, 45 S.W.3d at 692.
OTHER POTENTIAL SOURCES OF ERROR
Tape-Recorded Statement
      Fernandez’s counsel filed a pretrial motion to suppress Fernandez’s tape-recorded statement. 
However, counsel never obtained a hearing on the motion and did not object to the admission of
the statement at trial.
      Article 38.22, section 3(a) of the Code of Criminal Procedure provides that an accused’s oral
statement is not admissible unless: (1) it is electronically recorded; (2) it reflects that the accused
was advised of his statutory rights before making the statement and waived them; (3) “the
recording device was capable of making an accurate recording, the operator was competent, and
the recording is accurate and has not been altered”; (4) all voices on the recording are identified;
(5) and the State gives defense counsel a copy of the recording not less than twenty days before
trial. Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a) (Vernon Supp. 2003). We have reviewed
the recording and the testimony given in connection with its admission. The requirements of
article 38.22, section 3(a) were met.
      Accordingly, the court did not abuse its discretion by admitting the tape-recorded statement
in evidence. Thus, its admission does not constitute an issue “which might arguably support an
appeal.” See Sowels, 45 S.W.3d at 692.
Culpable Mental State
      The only contested issues at trial were the level of culpability with which Fernandez acted
when he shot Rodriguez and whether the shooting was a “voluntary” act. Accordingly, a
challenge to the sufficiency of the evidence to support the jury’s findings on these issues would
seem appropriate.
      As we noted in Taulung, a challenge to the sufficiency of the evidence “would not seem to
fit within the category of ‘arguments that cannot conceivably persuade the court’ because an
advocate can always present an argument, regardless of how convincing it may be, that the
evidence is lacking.” Taulung, 979 S.W.2d at 857. Nonetheless, we also observed “that Texas
courts have addressed (and rejected) sufficiency challenges in the Anders context on many
occasions.” Id. (citing Spencer v. State, 465 S.W.2d 370, 370-71 (Tex. Crim. App. 1971); Bruns
v. State, 924 S.W.2d 176, 178-79 (Tex. App.—San Antonio 1996, no pet.); Crittendon v. State,
923 S.W.2d 632, 635 (Tex. App.—Houston [1st Dist.] 1995, no pet.); Mays v. State, 904 S.W.2d
920, 925 (Tex. App.—Fort Worth 1995, no pet.)). We concluded that the issue of whether a
sufficiency challenge presents an issue of arguable merit must be decided on a case-by-case basis. 
Id.
      In reviewing a claim of legal insufficiency, we view the evidence in a light most favorable to
the verdict and determine whether any rational trier of fact could have found the essential element
beyond a reasonable doubt. Lacour v. State, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000) (citing
Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979)). 
We resolve any inconsistencies in the evidence in favor of the verdict. See Curry v. State, 30
S.W.3d 394, 406 (Tex. Crim. App. 2000).
      In reviewing a challenge to the factual sufficiency of the evidence, we begin with the
assumption that the evidence is legally sufficient. Santellan v. State, 939 S.W.2d 155, 164 (Tex.
Crim. App. 1997). We must view all the evidence without the prism of the “in the light most
favorable to the prosecution” construct. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996). We ask “whether a neutral review of all the evidence, both for and against the finding,
demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury’s
determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by
contrary proof.” Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); see also Goodman
v. State, 66 S.W.3d 283, 285 (Tex. Crim. App. 2001).
      We must also remain cognizant of the factfinder’s role and unique position—one that the
reviewing court is unable to occupy. Johnson, 23 S.W.3d at 9. The jury determines the
credibility of the witnesses and may “believe all, some, or none of the testimony.” Chambers v.
State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). It is the jury that accepts or rejects
reasonably equal competing theories of a case. Goodman, 66 S.W.3d at 287. A decision is not
manifestly unjust as to the accused merely because the factfinder resolved conflicting views of
evidence in favor of the State. Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997).
      The record contains evidence that Fernandez entered Rodriguez’s apartment intending to harm
him. He retrieved the firearm before entering. He began to argue with Rodriguez almost as soon
as he entered the apartment, apparently with the firearm at his side. He fled the scene after
shooting Rodriguez.



      Conversely, the fact that Fernandez shot Rodriguez while struggling with him would support
a finding that the shooting was not intentional. Fernandez said in his tape-recorded statement that
the shooting was accidental. Fernandez’s apparent remorse immediately after the shooting tends
to support his contention that he did not intend to harm Rodriguez. Fernandez’s flight from the
scene accords with the eyewitnesses’ testimony that he was “hysterical,” “scared,” and
“distraught” after he shot Rodriguez.
      The jury is the sole judge of the credibility of the witnesses and the weight to be given their
testimony. Johnson, 23 S.W.3d at 9; Chambers, 805 S.W.2d at 461. The jury heard the evidence
and rejected Fernandez’s assertion that he did not intentionally or knowingly shoot Rodriguez. 
We must give due deference to this verdict. Johnson, 23 S.W.3d at 9; Clewis, 922 S.W.2d at
135. We cannot say from the record “that the proof of guilt is so obviously weak as to undermine
confidence in the jury’s determination, or the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof.” Johnson, 23 S.W.3d at 11.
      Accordingly, we conclude that the evidence is legally and factually sufficient to support the
jury’s verdict that Fernandez acted intentionally or knowingly when he shot Rodriguez. Thus, this
does not constitute an issue “which might arguably support an appeal.” See Sowels, 45 S.W.3d
at 692.
Voluntariness
      The court instructed the jury that it should acquit Fernandez if it found “that the shooting was
the result of an involuntary accidental discharge of the firearm and not the voluntary act or conduct
of the defendant.”
      “A person commits an offense only if he voluntarily engages in conduct, including an act, an
omission, or possession.” Tex. Pen. Code Ann. § 6.01(a) (Vernon 1994). The voluntariness
required by section 6.01(a) “means the absence of an accidental act” and “refers only to one’s
physical bodily movements.” Brown v. State, 89 S.W.3d 630, 633 (Tex. Crim. App. 2002)
(quoting Alford v. State, 866 S.W.2d 619, 624 (Tex. Crim. App. 1993)).
      The same evidence which supports the jury’s finding that Fernandez acted intentionally or
knowingly supports its finding that he acted voluntarily. Accordingly, we conclude that the
evidence is legally and factually sufficient to support the jury’s verdict that Fernandez acted
voluntarily when he shot Rodriguez. Thus, this does not constitute an issue “which might
arguably support an appeal.” See Sowels, 45 S.W.3d at 692.
CONCLUSION
      We have reviewed the potential sources of error and have conducted an independent review
of the record. We agree with counsel that Fernandez’s appeal presents no issues of arguable
merit. Accordingly, we affirm the judgment.
 
                                                                   REX D. DAVIS
                                                                   Chief Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
      (Justice Gray concurring in the result)
Affirmed
Opinion delivered and filed January 15, 2003
Do not publish
[CRPM]